THOMAS v. CINCINNATI. N. O. & T. P. RY. CO.

(Circuit Court, D. Kentucky. December 14, 1898.)

RAILROADS—COLLISION AT CROSSING—BURDEN OF PROOF AS TO NEGLIGENCE.
Where a freight train on defendant's road separated on account of the breaking of a drawbar stem, and some of the cars ran back downgrade, and collided with a train on another road at a crossing, the burden rested on defendant to prove freedom from negligence of its employés; and such burden is not met where it is not shown that the stem was not defective, that it had been inspected within a reasonable time, or that the train was properly handled.

On exceptions to the report of the special master on the intervening petition of the Louisville & Nashville Railroad Company.

Edward Colston, for receiver.
J. W. Bryan and O'Hara & Rouse, for creditors.

TAFT, Circuit Judge. In 1895 the Louisville & Nashville Railroad Company filed an intervening petition in this cause. The petition averred that in 1891 a collision occurred at Junction City, where the line of the Cincinnati, New Orleans & Texas Pacific Railway crosses the line of the Louisville & Nashville road, whereby the tender of an engine and a box car were materially injured; that this collision occurred through the negligence of the employés of the Cincinnati, New Orleans & Texas Pacific Railway Company. The intervening petitioner claims a lien on the property of the railroad company under a statute of Kentucky passed in 1876. The receiver filed a demurrer to that part of the petition which set up a lien, filed a plea of the statutes of limitation to the claim, and also filed an answer denying the negligence. The master found that there was no lien, because the statute under which it was claimed was invalid by reason of the constitution of Kentucky. The master overruled the plea of the statute of limitation, finding that the statutory period was five years, and that the cause had accrued within less than that time before the filing of the intervening petition. On the facts in the case the master found that there was no negligence.

The undisputed facts were as follows: A freight train of the Cincinnati, New Orleans & Texas Pacific Railway Company, at night, approached the Louisville & Nashville crossing at Junction City, and stopped. The engine and nine cars were then uncoupled from the rest of the train, and proceeded across the Louisville & Nashville track, upgrade, into the freight yard of the Cincinnati, New Orleans & Texas Pacific Railway Company, to the north of the junction, for the purpose of cutting off and leaving there one of the nine cars. While the Cincinnati, New Orleans & Texas Pacific train was thus engaged, a freight train approached the junction from the west on the Louisville & Nashville track, and, receiving the proper signals, was proceeding slowly over the crossing. About the time the engine reached the crossing, a drawbar stem of the fourth freight car from the end of the cut of cars which had been taken across the track by the Cincinnati, New Orleans & Texas Pacific Railway engine broke, and four cars started down the somewhat steep grade towards the Louisville & Nashville track. The distance was 400 or 500 feet, and the velocity attained by the cars before reaching the junction was between 10 and 20 miles an hour. A brakeman upon the cars attempted to stop them, but, failing to do so, jumped to the ground. The conductor of the Cincinnati, New Orleans & Texas Pacific train was on the platform of the junction station. He is the only witness who is called to testify as to how the accident occurred. He said he examined cars after the accident, and, when asked what the cause of it was, said a broken drawbar stem. "Q. Whereabouts did it break? A. In the keyway,—what we call the hole punched through the drawbar stem to hold it in its place. Q. State how long you have been a freight

conductor. A. About 14 or 15 years. Q. And what experience have you had with switching and handling freight cars in the yard generally,—what length of time? A. In that length of time we do more or less every day in regard to switching. Q. State whether or not, in your experience, the breaking of a drawbar stem, as you describe it, is a common accident, or otherwise. A. Yes; frequently occurs. Q. State whether or not any practicable inspection would discover the liability to such an accident. A. It could not, not being visible to the outside eye, you know." Witness then stated that the engineer was a competent and careful man, but that he could not observe his manner of handling the engine at that time.

The defense is that this was an inevitable accident, and the question is whether the evidence above given proves it to have been, so that the defendant can escape liability. It seems to me that this case must be controlled by the rules of law laid down in The Olympia, reported in 22 U. S. App. 69, 9 C. C. A. 393, and 61 Fed. 120. In that case a collision in the river was caused by the breaking of a tiller rope, and the principles that governed the liability of the parties were thus stated by Judge Lurton, speaking for the court of appeals:

"The defendant says that the tiller rope broke, and that the vessel became unmanageable, and the collision unavoidable. That only shows that the breaking of the tiller rope was the cause of the collision. It must go further, and show that the cause which operated to break the tiller rope was unavoidable. The collision was but the result of the cause which produced a broken tiller rope. If that cause is not shown to be unavoidable, how can it be said that the collision was an inevitable accident? Unless the defendant can get rid of the negligence proved against it, by showing the cause which broke this wheel rope, and that the result of that cause was inevitable, or by showing all the possible causes which might have produced such an effect, and then showing that the result of each one of these possible causes could not have been avoided by it, it has not met the burden of proof which rests upon it. This is the doctrine of the late case of The Merchant Prince [1892] Prob. 179, 187."

. I do not understand that the rule at common law is any different in this respect from the rule in admiralty. The fact that this accident occurred as it did occur puts the burden on the Cincinnati, New Orleans & Texas Pacific Railway Company, or its representative, the receiver, of showing that the drawbar stem did not break through any negligence of its employés. There is nothing to contradict the hypothesis that the drawbar stem was partly broken or defective before the accident. There was no evidence to show that a due inspection of it had taken place within any reasonable time before the break. There is no evidence to show that the breaking of the drawbar stem did not occur through some careless handling of the engine by the engineer. It is possible that any one of these causes might have led to the breaking of the drawbar stem. No evidence has been introduced to negative these possibilities. The evidence which was introduced, therefore, does not support the burden of proof which the fact itself puts upon the defendant. I think this was a mistake of law on the part of the master, and that the exceptions must therefore be sustained, and that the Louisville & Nashville Railroad Company is entitled to a

.decree finding the Cincinnati, New Orleans & Texas Pacific Railway Company indebted to it in the sum of $476.26, the amount required to repair the injury done in the collision.

The exceptions and proof in support of the exceptions filed by counsel for the Louisville & Nashville Company do not complain of the holding of the master that no lien could arise in this case against the property of the railroad company. I do not find it necessary, therefore, to consider this issue, and merely make an order finding the indebtedness as already stated.